SHUFFLE TECH INTERNATIONAL LLC
1440 N. Kingsbury, Suite 218
Chicago, IL 60642
Telephone: 312-787-7780
Facsimile: 312-276-8864

**FILED**
OCT 1 8 2011
OCT 18 2011
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHUFFLE TECH INTERNATIONAL LLC, an Illinois limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>WOLFF GAMING, INC., a Colorado corporation,<br><br>Defendant. | 11cv7358<br>JUDGE MANNING<br>MAG. JUDGE KIM<br><br>COMPLAINT FOR:<br><br>1. DECLARATORY JUDGMENT RE: NO CONTRACT;<br><br>2. DAMAGES<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Shuffle Tech International LLC (hereinafter "Shuffle Tech") hereby alleges against Defendant Wolff Gaming, Inc. ("Wolff") as follows:

### JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction over this civil action, which seeks declaratory judgement that there is not a binding contract between Plaintiff Shuffle Tech and Defendant Wolff and damages, pursuant to 28 U.S.C. 1332, 2201 *et. seq.*, and 1367. There is diversity of citizenship as Plaintiff Shuffle Tech is an Illinois limited liability company, with its principal place of business located at 1440 N. Kingsbury, Suite 218, Chicago, IL 60642, and Defendant Wolff is a

Colorado corporation, with its principal pace of business located at 9655 W. Colfax Avenue, Lakewood, CO 80215. The amount in controversy exceeds seventy-five thousand dollars ($75,000), as the agreement being negotiated between Plaintiff Shuffle Tech and Defendant Wolff that is the subject of the declaratory judgment claim set forth herein, involved earnest money payments, prospective advance payments, and prospective minimum purchase requirements in excess of seventy-five thousand dollars ($75,000). There is a justiciable and actual controversy between the parties with respect to whether there is a binding contract between the parties or merely documents outlining proposed terms for an agreement that was never executed. Plaintiff Shuffle Tech denies that there is a binding contract between the parties and Defendant Wolff has stated that it believes there is a binding contract between the parties.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. 1391(a) because a substantial part of the events or omissions giving rise to the claims occurred within this judicial district and because Defendant Wolff is subject to the personal jurisdiction of the Court of this judicial district.

3. This Court has personal jurisdiction over Defendant Wolff because Defendant Wolff, at all relevant times herein, was and is doing business in Illinois and this judicial district, including, but not limited to, attending meetings with Plaintiff Shuffle Tech to negotiate the proposed contract that is the subject of this complaint and meet with Shuffle Tech's vendors located within Illinois; and/or reasonably expects its acts to have consequences within the State of Illinois.

**THE PARTIES**

4. Plaintiff Shuffle Tech is an Illinois limited liability company organized and existing under the laws of the State of Illinois, with its principal place of business located at 1440 N. Kingsbury Street, Suite 218, Chicago, IL, 60642. Plaintiff Shuffle Tech is engaged in the business of manufacturing and selling automatic card shuffling machines, including to companies and end-users in the United States, including to companies and end-users within this judicial district.

5. Plaintiff Shuffle Tech is informed and believes, and on that basis alleges, that Defendant Wolff is a corporation organized and existing under the laws of the State of Colorado, with its principal place of business located at 9655 W. Colfax Avenue, Lakewood, CO 80215. Plaintiff Shuffle Tech is informed and believes, and on that basis alleges, that Defendant Wolff is engaged in the business of distributing gaming equipment and products to companies located throughout the United States, including to companies and end-users within this judicial district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

6. At least as early as April 2010, Plaintiff Shuffle Tech and Defendant Wolff began negotiating with each other to enter into a development and distribution agreement whereby, in relevant part, Plaintiff Shuffle Tech would develop and manufacture a particular model of its automatic card shuffling machine (using technology previously developed by Shuffle Tech) for use in legal gaming venues, and Defendant Wolff would provide development funds for use in developing said machine and would have the exclusive right to purchase said machine from Shuffle Tech for distribution to legal gaming venues in North America, South America, and the Caribbean based on the terms and conditions of the proposed agreement.

7. At the time of said negotiations, Wolff represented to Shuffle Tech that Wolff had access to capital as required to fully fund development, manufacturing, and distribution of the machine to legal gaming venues in the agreed territory. Wolff also represented that Wolff was in the process of expanding its channels of distribution for the automatic card shufflers by acquiring two other licensed gaming equipment distribution businesses that would substantially expand Wolff's gaming license portfolio and Wolff's geographic market from its then current markets in Colorado and Wyoming to substantially the entire western United States, including the core gaming markets in California, Nevada, Arizona, and Oklahoma.

8. Negotiations between Plaintiff Shuffle Tech and Defendant Wolff for the proposed development and distribution agreement involved telephone conversations and written correspondence between Plaintiff Shuffle Tech and Defendant Wolff, including, but not limited to, a DRAFT Development and Distribution Agreement jointly drafted by both parties on June 3, 2010, and a Letter of Intent dated June 3, 2010 executed by both parties on that date and providing for the payment of earnest money; the parties agreed that said earnest money would be used by Shuffle Tech to begin development work in the interim period while both parties reviewed the DRAFT agreement with respective attorneys and while Wolff reviewed the DRAFT agreement with Colorado state gaming regulators to ensure that the DRAFT agreement was in compliance with the terms and conditions of Wolff's Colorado gaming license.

9. The June 3, 2010 Letter of Intent specifically stated that the funds advanced from Wolff to Shuffle Tech constituted earnest money, and that in the event that the DRAFT Development and Distribution Agreement of the same date was approved by

both parties' respective attorneys and by Colorado gaming regulators, those funds would apply to the initial payment(s) required under the proposed agreement upon its execution, and that in the event that the DRAFT agreement of the same date was for any reason not approved and not executed by both parties within 90 days, that Wolff could request the return of their earnest money, with at least 15 days written notice to Shuffle Tech. The exact language of that paragraph is as follows:

> "As evidence of Wolff Gaming's commitment to proceed, Wolff Gaming agrees to immediately pay $100,000 toward the $525,000 initial commitment described in the draft Agreement. This earnest money is to be held by Shuffle Tech and may be used to proceed with the project; however, in the event that a final Agreement cannot be signed within 90 days, Wolff Gaming may request the return of the entire $100,000 paid as earnest money, and said earnest [money] will be refunded within 15 days of said request. Provided the Agreement is signed, the earnest money will be deemed to be the initial payment."

10. Upon mutual execution of the June 3, 2010 Letter of Intent and upon receipt of an initial payment of $25,000 in June 2010, and with the understanding and good faith expectation that Wolff would follow through in completing and executing a final development and distribution agreement, Shuffle Tech began work on the project described in the proposed agreement. Shuffle Tech expended a considerable amount of time and money on behalf of Wolff, including, but not limited to travel expenses to various destinations at Wolff's request to assist Wolff in procuring funds to enable Wolff to finalize and execute the DRAFT development and distribution

agreement, after it became evident that Wolff did not in fact have the funds to proceed with the project as Wolff had previously represented to Shuffle Tech.

11. Throughout the period of approximately June 2010 through April 2011, Shuffle Tech continued to request that Wolff finalize and execute the development and distribution agreement drafted on June 3, 2010. Without an executed agreement as evidence that Wolff was a bona fide customer of Shuffle Tech and committed to providing development funds and purchasing a minimum number of machines each year for the life of the agreement, Shuffle Tech was unable to persuade Shuffle Tech's own investors, new investors, or lenders that Wolff was a bona fide customer who intended to purchase products from Shuffle Tech, and thus Shuffle Tech was unable to raise the additional funds that Shuffle Tech required to meet the product development obligations that would have existed under the agreement, if it had been executed. In fact, as time went on, Shuffle Tech's prospective lenders and investors continued to become more skeptical of Shuffle Tech's relationship with Wolff; it made no sense to any third party that Shuffle Tech management would consider Wolff to be a bona-fide customer and believe that they had a valid agreement with Wolff when Wolff, after 8-10 months still refused to execute the proposed development and distribution agreement.

12. In March 2011, Wolff requested that Shuffle Tech (at its own expense) join a meeting with a public corporation that Wolff had identified as a potential customer of Wolff and a potential source of funding for Wolff. However, after Shuffle Tech attended that meeting, Wolff presented a new proposed agreement (indicating that they did not expect to move forward with the June 3, 2010 DRAFT agreement) that involved

licensing Shuffle Tech's technology and building automatic card shuffling machines themselves, rather than purchasing finished machines from Shuffle Tech. Shuffle Tech reviewed Wolff's March 2011 term sheet on approximately March 31, 2011 and responded to Wolff with several proposed modifications from March 31 through April 4, 2011.

13. Around April 4, 2011, Wolff effectively terminated communication with Shuffle Tech regarding the proposed licensing deal, again leaving Shuffle Tech in a state of limbo with no executed agreement that Shuffle Tech and/or its investors and lenders could rely upon.

14. Around April 25, 2011, Wolff requested and attended a meeting with Shuffle Tech in Chicago, and the parties met at a hotel restaurant near O'Hare airport. At that meeting, Shuffle Tech demonstrated a working prototype of the automatic card shuffling machine. Despite the fact that Wolff had been substantially non-communicative for months, and had refused to discuss the technical development of the machine and the development process, Kevin Wolff, owner and President of Wolff, complained that the prototype was not exactly what he expected and belittled the inventor who had created and patented the concept of the machine and built the prototype that was being demonstrated.

15. At the same meeting on April 25, 2011, Wolff continued to refuse to discuss the fact that no contract had been executed between the parties after nearly 11 months since the draft agreement was negotiated and the June 3, 2010 Letter of Intent executed by the parties. In fact, it was by then unclear which of the now several proposed deals from Wolff that Wolff even considered to be the agreement that would govern the

relationship if it went forward. Instead, Wolff continued to make baseless statements such as "I own the distribution rights for this machine". When confronted with the fact that the deal was impossible if Wolff refused to finalize and execute the June 3, 2010 DRAFT agreement or any other agreement with Shuffle Tech, and that Shuffle Tech could not raise funds from its own investors and sustain its business on the basis of the nearly one year old Letter of Intent, Wolff made the inane statement "your lenders are you problem, not mine".

16. By April 2011, it had also become clear that Wolff's prior representations that Wolff was in the process of acquiring several other distribution businesses were false. In October and November 2010, Wolff had made commitments to acquire two other licensed gaming product distributors and combine those businesses with Wolff, thus expanding Wolff's geographic distribution territory from Colorado and Wyoming to nearly the entire western United States, thereby facilitating distribution of enough automatic card shuffling machines to meet Wolff's obligation under the proposed agreement. Those companies expended considerable time, energy, and expense to prepare for the promised acquisition and negotiate the agreements. However, Wolff's commitments to those companies also proved to be hollow, and Wolff could not raise the funds required to proceed with those acquisitions. Rather than inform the principals of those acquisition targets that Wolff was unable to proceed, Wolff simply left them hanging for several months with continued promises that Wolff was wrapping up financing agreements and their acquisition deals would move forward. Wolff ultimately failed to raise the required funds, and never actually informed the

companies that the acquisitions were off; they simply gave up after too many attempts to contact Kevin Wolff by phone or email went unacknowledged.

17. Upon information and belief, Wolff Gaming has falsely represented to third party lenders and investors that Wolff has a final, executed contract with Shuffle Tech, and on the basis of their false representations, borrowed nearly a quarter million dollars from investors who have been led to believe that their funds are being used to fund development of distribution of the card shuffler. Instead, upon information and belief, Wolff has misappropriated those funds for use as working capital in Wolff's gaming equipment distribution business, and lenders have remained frustrated by their inability to elicit any response from Wolff regarding the status of the project they believe they invested in. On that basis, Shuffle Tech believes that Wolff has had an incentive to hide the facts of its situation from everybody involved.

18. From approximately April 25, 2011 until around July 25, 2011, Wolff continued to remain unavailable for discussion of the situation. On one occasion, out of the blue on June 8, 2011, Kevin Wolff sent an email message to Shuffle Tech CEO Rick Schultz asking about the status of the shuffler project, as though the parties were at that time engaged in a normal business relationship. Shuffle Tech replied the next day, on June 9, expressing surprise that Kevin Wolff would believe that the relationship was intact after Kevin Wolff refused to respond to Shuffle Tech for more than a month. Shuffle Tech explained at that point that the business relationship was no longer possible, that credit could no longer be extended to Wolff under the terms of any of the proposed agreements, and that Shuffle Tech wished to resolve the

matter of the earnest money by repaying it to Wolff. Wolff did not repy to that or subsequent communications on the subject.

19. Around July 25, Shuffle Tech again attempted to contact Wolff to resolve the matter of the earnest money. Incredibly, Kevin Wolff acted as if he was surprised that, despite the most recent communications 45-60 days earlier, Shuffle Tech hadn't just gone ahead and completed the project and that Shuffle Tech was no longer willing to do business with Wolff. Kevin Wolff requested a few days to respond, promising that he now had the funds available and could finalize the agreement. Once again, instead of stepping up to the plate with a plan to complete the deal negotiated fourteen months earlier, Kevin Wolff once again disappeared and refused to respond to numerous phone calls, emails, and text messages, other than a single text message on Saturday July 30 stating that "I will call you when I [h]ave a chance."

20. On August 1, 2011, Shuffle Tech sent a letter to Wolff by FedEX and email expressing in writing that due to Wolff's conduct, there was no way to move forward, and that it was in the best interest of all parties to settle the outstanding business between the parties and go their separate ways. Shuffle Tech received no reply to that message, or a follow up message by email dated August 12, or another follow up dated August 18, or another follow up dated September 7.

21. Shuffle Tech reached Kevin Wolff by telephone for the first time since July 25 on Thursday October 13 to discuss a settlement proposal. Prior to that, Wolff had not made any attempt to communicate with Shuffle Tech or respond to Shuffle Tech since approximately July 25, or responded to any of dozens of telephone and email

messages. Since then, Wolff has not made any attempt to advance settlement discussions or propose an equitable resolution.

## COUNT I

### (Declaratory Judgment Re: No Contract)

### Against Defendant Wolff Gaming, Inc.

22. Plaintiff Shuffle Tech re-alleges and incorporates herein by reference paragraphs 1-21, inclusive, of this Complaint, as though fully set forth herein.

23. Plaintiff Shuffle Tech seeks a declaration that there is no binding agreement between Plaintiff Shuffle Tech and Defendant Wolff, other than the agreement regarding earnest money specifically contained within the June 3, 2010 Letter of Intent, and that specifically the DRAFT Development and Distribution Agreement negotiated between the parties on June 3, 2010 but not executed by either party after more than one year is not a binding contract.

24. The June 3, 2010 DRAFT Development and Distribution Agreement clearly indicates on its face that it is merely a DRAFT agreement, with the phrase "Discussion Draft Only/Revised 6/3/10" clearly printed at the top near the initials of both parties, and the words "Draft Only" specifically underlined by Kevin Wolff for greater emphasis.

25. Plaintiff Shuffle Tech denies that there is a binding contract between Plaintiff Shuffle Tech and Defendant Wolff. Defendant Wolff has stated to Plaintiff Shuffle Tech (and upon information and belief, to others) that Wolff "owns" distribution rights for Shuffle Tech's machines for a certain territory that includes North and South America, without any supporting facts or evidence.

26. An actual controversy exists between Plaintiff Shuffle Tech and Defendant Wolff as to whether the unexecuted DRAFT "Development and Distribution Agreement" of June 3, 2010 or any other written or oral communication between the parties, other than the June 3, 2010 Letter of Intent, constitute a binding contract requiring performance.

## COUNT II

### (Economic Damages)

### Against Defendant Wolff Gaming, Inc.

27. Plaintiff Shuffle Tech re-alleges and incorporates herein by reference paragraphs 1-26, inclusive, of this Complaint, as though fully set for herein.

28. As a direct and promise result of the conduct alleged herein, Shuffle Tech has expended considerable time, energy, and funds on behalf of Wolff Gaming, including unplanned travel expenses, legal expenses, and lost business, and thus has sustained substantial economic damage as a result of Wolff's conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Shuffle Tech prays for relief as follows:

A. For entry of a judgment declaring that the June 3, 2010 DRAFT "Development and Distribution Agreement", specifically labeled as Discussion Draft Only, and/or other discussion draft documents do not constitute a binding contract;

B. For entry of a judgment declaring that Plaintiff Shuffle Tech is not obligated to perform under the June 3, 2010 DRAFT "Development and Distribution Agreement" or any other document, excluding the June 3, 2010 Letter of Intent, which provides for the

refund of earnest money and nothing more in the event that no final agreement was executed.

C. For entry of a judgment declaring that Shuffle Tech's only obligation to Wolff is to refund $124,940 advanced to Shuffle Tech as earnest money pursuant to the June 3, 2010 Letter of Intent.

D. For an award of damages for the amount that Shuffle Tech has expended on behalf of Wolff for purposes other than development of products as contemplated by the parties, to be proven at trial;

E. For an award of Shuffle Tech's costs and expenses, including attorneys fees, incurred in prosecuting this action, as permitted by applicable law;

F. For pre-judgment interest as permitted by applicable law; and

G. For an order awarding Plaintiff Shuffle Tech such other and further relief as the Court may deem just and proper.

Respectfully submitted:

SHUFFLE TECH INTERNATIONAL LLC

By: Richard J. Schultz, its Manager
1440 N. Kingsbury Street, Suite 218
Chicago, IL 60642
Telephone: 312-787-7780
Facsimile: 312-276-8864

Dated: 10/17/11