IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHUFFLE TECH INTERNATIONAL LLC, | ) | |
| an Illinois limited liability company, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WOLFF GAMING, INC., | ) | |
| a Colorado corporation, | ) | |
| Defendant. | ) | No. 11-cv-0738 |
| _____ | ) | |
| | ) | Hon. Blanche M. Manning |
| WOLFF GAMING, INC., | ) | |
| a Colorado corporation, | ) | Magistrate Judge Young B. Kim |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | JURY DEMANDED |
| | ) | |
| SHUFFLE TECH INTERNATIONAL LLC, | ) | |
| an Illinois limited liability company, and | ) | |
| RICHARD J. SCHULTZ, | ) | |
| Counter-Defendants. | ) | |

<u>ANSWER  TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS</u>

WOLFF GAMING, INC., ("Wolff") by its attorney, Peter Ordower, answers the First Amended

Complaint ("the Complaint") and counterclaims against SHUFFLE TECH INTERNATIONAL

LLC ("Shuffle Tech") and RICHARD J. SCHULTZ ("Schultz") as follows:

<u>ANSWER</u>

1.  Wolff neither admits nor denies paragraph 1 for lack of sufficient knowledge and

    information.

2.  Admitted, except Wolff denies knowing of end-users in this judicial district.

3.  Wolff neither admits nor denies paragraph 3 for lack of knowledge and information.

4.  Wolff denies doing business in Illinois, but admits it has an agreement with Shuffle Tech, which is located in Illinois.

5.  Wolff neither admits nor denies the allegations in paragraph 5 as it alleges legal conclusions rather than facts.

6.  Wolff admits that around April, 2010, the parties began negotiating an agreement to jointly develop an industrial grade card shuffler. The specifics of that agreement are set forth in a Development and Distribution Agreement prepared by Shuffle Tech dated 5/4/10 which Shuffle Tech prepared and submitted to Wolff, a copy of which accompanies this Answer as Exhibit 1.  On or about June 3, 201, Shuffle Tech prepared a revised version of the Agreement , a copy of which is attached as Exhibit 2. (Certain information on pricing of the card shuffler has been redacted).

7.  Denied.

8.  Wolff objects to plaintiff's repeated use of the term "DRAFT agreement" and "DRAFT development and distribution agreement" throughout the Complaint as no document exists by that name. Plaintiff's continued use of the capitalized word "DRAFT", no less than 19 times in the Complaint, is merely intended to mislead readers and prejudice Wolff through repetition of a non-existent name. The document referred to at paragraph 8, which Shuffle Tech International LLC ("Shuffle Tech") repeatedly mislabels, as shown by Exhibit A attached to the Complaint, and a full copy of which is attached hereto as Exhibit 2 (with redactions of pricing information) is actually entitled "Development and Distribution Agreement", and Wolff hereafter refers to such document as the "Agreement".  Wolff further objects to the incomplete use of a single page of the Agreement as Exhibit A, as it fails to accurately represent the true document. Wolff

admits that the parties negotiated an Agreement on or about June 3, 2010, a true copy of which is not attached to this Answer as Exhibit 2 (with price redactions). Wolff denies the remainder of paragraph 8, except it admits that no DRAFT was ever executed.

9. Wolff admits that Richard J. Schultz ("Schultz") the President of Shuffle Tech, also prepared the letter attached to the Complaint as Exhibit B, and that Kevin Wolff signed it. Wolff denies plaintiff's summary of that letter, the text of which is accurately stated in the letter.

10. Denied.

11. Denied.

12. Denied.

13. Denied.

14. Denied.

15. Denied. Wolff admits that throughout portions of 2011, the parties continued to discuss various aspects of implementing their agreement as well as progress in its performance.

16. Denied.

17. Denied, except Wolff admits that Shuffle Tech never produced to Wolff a working prototype of the industrial grade card shuffler.

18. Denied.

19. Denied.

20. Denied.

21. Denied.

COUNT I

22. Wolff repeats and incorporates its responses to paragraphs 1 through 21 as its response to paragraph 22.

23. Denied.

24. Denied, except Wolff admits that the Agreement is not signed on its face.

25. Denied.

26. Denied.

27. Denied.

28. Denied.

COUNT II

29. Wolff repeats and incorporates its answers to paragraphs 1 through 28 as its answer to paragraph 29.

30. Wolff neither admits nor denies paragraph 30 as it does not allege facts but merely states legal conclusions.

31. Denied.

32. Denied.

33. Denied.

AFFIRMATIVE DEFENSES TO COUNTS I AND II

I.      ESTOPPEL

1. Plaintiff contends in Count I, and among other places at paragraphs 25 and 26, that the June 3, 2010 Agreement between the parties which included Wolff's exclusive distribution rights is allegedly unenforceable because it was not signed.

2. In Count II, however, and at paragraph 30, plaintiff admits that the "Letter of Intent" executed by the parties the same day "is a valid, binding agreement between the parties."

3. The first sentence of the "Letter of Intent" plaintiff has admitted, attached to the Complaint as Exhibit B, states "This is to confirm our mutual commitment to proceed with the draft Development & Distribution Agreement based on the Discussion Draft dated June 3, 2010 and amended as per our discussion."

4. By admitting that the "Letter of Intent" is a binding agreement, plaintiff acknowledges the parties' "commitment to proceed" with the Agreement regardless of whether the Agreement itself was signed.

5. In addition to committing to the Agreement, plaintiff repeatedly represented to Wolff and others that Wolff had exclusive distribution rights to the card shuffler. This included, for example, an e-mail which Rick Schultz sent to Kevin Wolff, on or about February 4, 2011, in which Schultz stated "We have an exclusive distribution agreement with Wolff Gaming for North and South America…."

6. Plaintiff further led Wolff to believe that it had exclusive distribution rights by, among other things, accepting more than $100,000 from Wolff, as provided in the Agreement, to develop the card shuffler, in return for Wolff's exclusive distribution rights.

7. Wolff reasonably relied to its detriment upon plaintiff's repeated assurances that it had exclusive distribution rights, in that, among other things, Wolff paid plaintiff more than $100,000 to Shuffle Tech for its exclusive distribution rights.

8. Under the circumstances, where plaintiff repeatedly made written commitments to provide Wolff with exclusive distribution rights, where plaintiff accepted and has retained more than $100,000 from Wolff in consideration of its exclusive distribution

rights, and where plaintiff represented to Wolff and others that it had exclusive

distribution rights, plaintiff should be estopped from denying Wolff's exclusive

distribution rights.

II.  EQUITABLE ESTOPPEL

1.  Shuffle Tech induced Wolff to pay it more than $100,000 and to expend considerable
    time, effort and money marketing the card shuffler by repeatedly and unambiguously
    representing and promising Wolff that Wolff was and would be its exclusive distributor
    of the card shuffler in North and South America, including the Caribbean region.

2.  Shuffle Tech's representations that Wolff was and would be its exclusive distributor in
    those territories included but are not limited to these representations:

    A.  On or about May 4, 2010,  Rick Shultz ("Schultz"), the President of Shuffle Tech,
        prepared and provided Kevin Wolff with a Development & Distribution
        Agreement which recited, among other things, that "…Shuffle Tech hereby
        appoints Wolff as Shuffle Tech's exclusive distributor of Products in the
        Territory".

    B.  On or about June 3, 2010, Schultz prepared and provided Wolff with a revised
        Development and Distribution Agreement which stated, among other things, that:

        (1) The "fully automatic card shuffling machines…[are] to be developed by
            Shuffle Tech, manufactured and distributed exclusively by Wolff in North and
            South America, and exported by Shuffle Tech to customers outside of North
            and South America." and

        (2) "Shuffle Tech hereby appoints Wolff as Shuffle Tech's exclusive distributor
            of products in the Territory. During the term of this Agreement, Shuffle Tech

6

agrees not to supply components or appoint any other Distributors for Products in the Territory, unless otherwise specifically provided herein, and further undertakes to refer promptly to Wolff any leads concerning prospective customers of the Products located in the Territory which, directly or indirectly, come to the attention of Shuffle Tech."

C. On or about June 3, 2010, Schultz prepared, signed, and provided to Kevin Wolff a letter affirming "our mutual commitment to proceed with the draft Development & Distribution Agreement based on the Discussion Draft dated June 3, 2010 and amended today as per our discussion." The Development & Distribution Agreement referred to in that letter contained the language quoted in the preceding paragraph of this Affirmative Defense, repeatedly appointing Wolff as exclusive distributor in the Territory.

D. On or about September 12, 2010, Schultz sent Kevin Wolff an email stating that "This machine will be distributed in the U.S. exclusively through Wolff Gaming".

E. In or about November, 2010, Schultz wrote and sent sent Kevin Wolff an e-mail stating that "We have an exclusive agreement to sell casino grade automatic shufflers exclusively through Wolff Gaming in Denver in North and South America".

F. On or about March 22, 2011, Schultz provided Kevin Wolff with a Draft Term Sheet to license the technology for the card shuffler which recited that "Wolff/DEQ shall have the exclusive right to lease or sell "Casino/Industrial" machines using licensed Shuffle Tech technology in North and South America including the Caribbean".

7

3. Wolff reasonably relied on Shuffle Tech's repeated statements that it was the exclusive distributor in those territories.

4. Wolff acted in reasonable reliance on Shuffle Tech's promises of exclusive distribution rights in that, among other things, it paid Shuffle Tech more than $100,000 to develop the product and acquire exclusive distribution rights, and in expending considerable time, money and effort to market the product.

5. Wolff would not have made such payments to Shuffle Tech, nor would it have undertaken to market the product, but for Shuffle Tech's representations that Wolff was and would have exclusive distribution rights.

6. Under the circumstances, Shuffle Tech is equitably estopped from denying Wolff's exclusive distribution rights.

III.     PROMISSORY ESTOPPEL

1. Shuffle Tech unambiguously promised Wolff exclusive distribution rights of its industrial grade card shuffler in the territories of North America, South America and the Caribbean.

2. Shuffle Tech's representations and promises that Wolff was and would be its exclusive distributor in those territories included but are not limited to these representations:

A. On or about May 4, 2010, Rick Shultz ("Schultz"), the President of Shuffle Tech, prepared and provided Kevin Wolff with a Development & Distribution Agreement which recited, among other things, that "…Shuffle Tech hereby appoints Wolff as Shuffle Tech's exclusive distributor of Products in the Territory".

B. On or about June 3, 2010, Schultz prepared and provided Wolff with a revised Development and Distribution Agreement which stated, among other things, that:

(3) The "fully automatic card shuffling machines…[are] to be developed by Shuffle Tech, manufactured and distributed exclusively by Wolff in North and South America, and exported by Shuffle Tech to customers outside of North and South America." and

(4) "Shuffle Tech hereby appoints Wolff as Shuffle Tech's exclusive distributor of products in the Territory. During the term of this Agreement, Shuffle Tech agrees not to supply components or appoint any other Distributors for Products in the Territory, unless otherwise specifically provided herein, and further undertakes to refer promptly to Wolff any leads concerning prospective customers of the Products located in the Territory which, directly or indirectly, come to the attention of Shuffle Tech."

C. On or about June 3, 2010, Schultz prepared, signed, and provided to Kevin Wolff a letter affirming "our mutual commitment to proceed with the draft Development & Distribution Agreement based on the Discussion Draft dated June 3, 2010 and amended today as per our discussion." The Development & Distribution Agreement referred to in that letter contained the language quoted in the preceding paragraph of this Affirmative Defense, repeatedly appointing Wolff as exclusive distributor in the Territory.

D.  On or about September 12, 2010, Schultz sent Kevin Wolff an email stating that "This machine will be distributed in the U.S. exclusively through Wolff Gaming".

E.  In or about November, 2010, Schultz wrote and sent sent Kevin Wolff an e-mail stating that "We have an exclusive agreement to sell casino grade automatic shufflers exclusively through Wolff Gaming in Denver in North and South America".

F.  On or about March 22, 2011, Schultz provided Kevin Wolff with a Draft Term Sheet to license the technology for the card shuffler which recited that "Wolff/DEQ shall have the exclusive right to lease or sell "Casino/Industrial" machines using licensed Shuffle Tech technology in North and South America including the Caribbean".

3.  Wolff's reliance on Shuffle Tech's promise of exclusive distribution rights, repeated over and over again, was expected and foreseeable.

4.  Wolff reasonably relied on Shuffle Tech's repeated promises of exclusive distribution rights.

5.  Wolff acted in reasonable reliance on Shuffle Tech's promises of exclusive distribution rights to its detriment  in that, among other things, it paid Shuffle Tech more than $100,000 to develop the product and acquire exclusive distribution rights, and in expending considerable time, money and effort to market the product in its territory.

6.  Wolff would not have made such payments to Shuffle Tech, nor would it have undertaken to market the product, but for Shuffle Tech's representations that Wolff was and would have exclusive distribution rights.

7. Under the circumstances, Shuffle Tech is estopped from denying Wolff's exclusive distribution rights.

IV.   WAIVER

1. Plaintiff waived a signature on the Agreement, as well as any alleged breach of the Agreement or the Letter of Intent, in that :

   A. Plaintiff affirmed the Agreement in the Letter of Intent the parties signed dated June 3, 2010;

   B. Plaintiff accepted Wolff's performance, derived the benefit of it, and continues to derive its benefit, in that plaintiff accepted and retained more than $100,000 from Wolff to develop the card shuffler in return for Wolff's exclusive distribution rights;

   C. Plaintiff continued to deal with Wolff on specifics of the card shuffler and its distribution well after any alleged breach.

2. Plaintiff's acceptance of Wolff's performance, and retention of its benefit, waived any possible objections to performance or to any failure to sign any agreement.

V.   UNCLEAN HANDS

1. Shuffle Tech should be denied the relief it seeks because it has unclean hands in its dealings with Wolff.

2. More specifically, Shuffle Tech has intentionally misled, deceived and defrauded Wolff by inducing Wolff to pay it more than $100,000 and soliciting and obtaining Wolff's marketing and distribution work for the card shuffler through repeated representations that Shuffle Tech now asserts were never true, including but not limited to the following:

A. On or about May 4, 2010, Rick Shultz ("Schultz"), the President of Shuffle Tech, prepared and provided Kevin Wolff with a Development & Distribution Agreement which recited, among other things, that "…Shuffle Tech hereby appoints Wolff as Shuffle Tech's exclusive distributor of Products in the Territory".

B. On or about June 3, 2010, Schultz prepared and provided Wolff with a revised Development and Distribution Agreement which stated, among other things, that:

(1) The "fully automatic card shuffling machines…[are] to be developed by Shuffle Tech, manufactured and distributed exclusively by Wolff in North and South America, and exported by Shuffle Tech to customers outside of North and South America." and

(2) "Shuffle Tech hereby appoints Wolff as Shuffle Tech's exclusive distributor of products in the Territory. During the term of this Agreement, Shuffle Tech agrees not to supply components or appoint any other Distributors for Products in the Territory, unless otherwise specifically provided herein, and further undertakes to refer promptly to Wolff any leads concerning prospective customers of the Products located in the Territory which, directly or indirectly, come to the attention of Shuffle Tech."

C. On or about June 3, 2010, Schultz prepared, signed, and provided to Kevin Wolff a letter affirming "our mutual commitment to proceed with the draft Development & Distribution Agreement based on the Discussion Draft dated June 3, 2010 and amended today as per our discussion." The Development &

Distribution Agreement referred to in that letter contained the language quoted in the preceding paragraph of this Affirmative Defense, repeatedly appointing Wolff as exclusive distributor in the Territory.

D.  On or about September 12, 2010, Schultz sent Kevin Wolff an email stating that "This machine will be distributed in the U.S. exclusively through Wolff Gaming".

E.  In or about November, 2010, Schultz wrote and sent sent Kevin Wolff an e-mail stating that "We have an exclusive agreement to sell casino grade automatic shufflers exclusively through Wolff Gaming in Denver in North and South America".

F.  On or about March 22, 2011, Schultz provided Kevin Wolff with a Draft Term Sheet to license the technology for the card shuffler which recited that "Wolff/DEQ shall have the exclusive right to lease or sell "Casino/Industrial" machines using licensed Shuffle Tech technology in North and South America including the Caribbean".

3.  In reliance on these and other misrepresentations, Wolff provided Shuffle Tech with more than $100,000, provided leads and ideas for manufacturing and selling the card shuffler , and other work.

4.  On information and belief, Shuffle Tech has attempted to steal opportunities to sell and manufacture the card shuffler in North and South America without compensating Wolff, by negotiating with likely customers including DEQ, which Wolff provided to Shuffle Tech in circumvention of its promises of providing Wolff with exclusive rights.

5. On information and belief, Shuffle Tech may further have misappropriated more than $100,000 provided by Wolff by using some or all of those funds for purposes other than developing the industrial grade card shuffler, for which those funds were entrusted..

6. Under the circumstances, the relief Wolff seeks would simply further the fraudulent conduct and damages caused by Shuffle Tech's deceit, and it should be denied any relief.

VI.   SETOFF

1. Wolff asserts a number of Counterclaims against Shuffle Tech, as set forth in detail in the Counterclaims which follow, which are hereby incorporated by reference.

2. Wolff categorically denies that it engaged it breached the parties' agreement, and denies it owes anything to Shuffle Tech. Any damages Shuffle Tech allegedly sustained are completely offset by the meritorious Counterclaims Wolff asserts against Shuffle Tech.

WHEREFORE, Wolff Gaming Inc. demands judgment in its favor and against Shuffle Tech International LLC, plus costs and such further relief as is appropriate.

## COUNTERCLAIMS

Wolff Gaming, Inc. counterclaims against Shuffle Tech International LLC and Richard J. Schultz as follows:

1. Wolff Gaming, Inc. ("Wolff") is a Colorado corporation engaged, among other things, in the business of manufacturing and selling gaming equipment to casinos and other establishments.

2. Shuffle Tech International LLC ("Shuffle Tech") is on information and belief an Illinois limited liability company engaged in the business of producing mechanical

card shufflers. On information and belief, neither Shuffle Tech nor any of its members are citizens of Colorado.

3. Richard J. Schultz ("Schultz") is and was the President of Shuffle Tech at all relevant times and is a resident of Illinois. In addition, he directly or indirectly owns a considerable amount of Shuffle Tech's shares and stands to gain substantial personal profit if the company generates profits.

4. Jurisdiction exists pursuant to 28 U.S.C. 1332 in that the parties are citizens of different states and the controversy involves more than $75,000 exclusive of interest and costs. In addition, jurisdiction exists under 28 U.S.C. 2201 as Wolff seeks a declaration of its rights, and pursuant to the supplemental jurisdiction provisions of 28 U.S.C. 1367.

5. Venue exists pursuant to 28 U.S.C. 1391(a) in that counter-defendant Shuffle Tech, International, LLC. is an Illinois limited liability company based in Chicago and a substantial part of the events herein occurred in Chicago. Prior to the events described herein, Shuffle Tech produced a card shuffler which was used for recreational purposes but which was not widely used in casinos or other licensed gaming establishments.

6. In or about April 2010, Wolff and Shuffle Tech began planning a joint venture and/or partnership whereby Wolff would provide Shuffle Tech with substantial funds to develop a commercial grade card shuffler to be used in casinos and other gaming establishments. In return for funding the product, Wolff would obtain exclusive rights to manufacture and distribute the card shuffler in North and South America and the Caribbean islands.

7.  Shuffle Tech thereafter  prepared and provided Wolff  with several versions of a
Development & Distribution Agreement  (the Agreement") setting out the business
terms of the joint venture, which was revised on or about May 4, 2010, and last
revised on or about June 3, 2010, a copies of which are attached hereto as Exhibits 1
and 2 (with pricing terms redacted). While not a complete summary of the
Agreement, the fundamental terms were that Wolff would pay $300,000 to Shuffle
Tech in three phases to develop the device, starting with $100,000 at the start of the
project, that Shuffle Tech would provide the technology to develop and manufacture
the device, that Wolff would have exclusive manufacturing and  distribution rights for
the device in North and South America, including the Caribbean  that Shuffle Tech
would sell versions of the product to Wolff at set prices subject to periodic
adjustment;  and that Wolff would promote the sale of the device in its territory  and
order a minimum number of card shufflers per year

8.  On June 3, 2010, the same day that  Wolff believes the Agreement was last revised,
the parties signed a separate letter of intent prepared by Shuffle Tech reciting the
parties' "mutual commitment to proceed with the draft Development & Distribution
Agreement based on the Discussion Draft dated June 3, 2010 and amended today as
per our discussion". A copy of the letter of intent is attached hereto as Exhibit 3.

9.  Although the Agreement was not signed, both parties thereafter undertook
performance of the Agreement, as they committed to in the signed letter of intent.
More specifically, Wolff paid Shuffle Tech $100,000 as initial funding for the device,
and Shuffle Tech began development of the product. In addition, Wolff undertook
efforts to market the device in advance of production.

16

10. Thereafter, Rick Schultz, the President of Shuffle Tech, repeatedly assured Wolff and informed others that Wolff had exclusive distribution rights for the card shuffler in its territory.

11. Following Wolff's payment of $100,000 to Shuffle Tech, Shuffle Tech further requested that Wolff advance it additional money to develop the product. Although Wolff was not required to invest additional funds until delivery of a working prototype of the card shuffler, Wolff agreed to advance Shuttle Tech additional funds at that time, and paid Shuffle Tech approximately $24,940 more as part of their joint venture.

12. On or about March 22, 2011, following further apparent development of the device and Wolff's marketing efforts, Shuffle Tech prepared and transmitted to Wolff a Draft Term Sheet to license the technology for the card shuffler to Wolff in which, among other things, Shuffle Tech acknowledged that Wolff had already paid Shuffle Tech $120,000 to develop the product and protect the intellectual property relating to it, and in which Shuffle Tech reaffirmed that "Wolff/DEQ shall have the exclusive right to lease or sell "Casino/Industrial" machines using licensed Shuffle Tech technology in North and South America including the Caribbean".

13. As part of its efforts to promote sales of the product, Wolff undertook negotiations to work with other entities to manufacture and sell a significant number of the card shufflers to potential buyers. Because Shuffle Tech had not yet delivered a working prototype of the card shuffler, and such leads had further questions about the card shuffler, Wolff referred numerous potential buyers and/or entities who might assist in manufacturing to Shuffle Tech, including DEQ. On information and belief, Shuffle

Tech thereafter engaged in direct negotiations with some or all of those leads to deal
directly with them to help develop the device or buy quantities of it, while ignoring
Wolff's exclusive rights and concealing such dealings from Wolff.

14. On October 18, 2011, as the economic potential for the card shuffler continued to
grow, Shuffle Tech repudiated the parties' agreement by filing this lawsuit and
attempting to nullify Wolff's exclusive rights .

15. Thus, having used Wolff's money, marketing expertise, time, effort and contacts to
develop the card shuffler and a market for it, Shuffle Tech wrongfully attempted to
cheat Wolff out of the consideration Shuffle Tech had promised from the beginning
of their venture, the exclusive right to distribute the product in North and South
America including the Caribbean region as well as manufacturing rights.

COUNT I

(BREACH OF AGREEMENT-SHUFFLE TECH)

16. Wolff repeats and incorporates paragraphs 1 through 15 of these Counterclaims as
paragraph 16.

17. Wolff and Shuffle Tech had an agreement as described above, whereby in
consideration of Wolff providing Shuffle Tech with money to develop the card
shuffler, and Wolff developing a market for it, Wolff would be the exclusive
distributor of the card shuffler in North and South America including the Caribbean
region as well as obtain manufacturing rights.

18. Wolff fully performed its obligations under the agreement until Shuffle Tech
repudiated it, including among other things, paying Shuffle Tech more than $100,000
to develop the card shuffler and generating leads for buyers.

18

19. Shuffle Tech has repudiated and breached the parties' agreement by, among other things:

   (a) failing to deliver a working prototype of the card shuffler to Wolff in a reasonable time; and

   (b)  denying and refusing to honor its commitment that Wolff would be the exclusive distributor of the product in North and South America and the Caribbean as well as obtain manufacturing rights; and

   (c) on information and belief, attempting to circumvent Wolff's exclusive rights by negotiating with others to produce and distribute the product in Wolff's market territory without Wolff's agreement and participation.

   (d) on information and belief, misappropriating some of the money provided by Wolff for purposes other than creation of the industrial grade card shuffler.

20. Wolff has been and will continue to be damaged by Shuffle Tech's wrong and unlawful conduct, in that among other things:

   (a) Wolff has paid Shuffle Tech approximately $124,940.00 in reliance on the parties' agreement and Shuffle Tech's representations;

   (b) Wolff has been and will be deprived of substantial lost profits, business opportunities and expected revenues;

   (c) Wolff has expended considerable time and money in efforts to market the card shuffler;

   (d) Wolff has been deprived of other potential business opportunities which it could have pursued with the time, money and effort it expended on its venture with Shuffle Tech;

(e) Wolff has and will have to expend considerable legal fees and expenses in rectifying Shuffle Tech's misconduct.

21. In addition to awarding Wolff damages, including lost profits, a temporary and permanent injunction should be entered prohibiting Shuffle Tech from manufacturing, distributing or selling any industrial grade card shuffler in North or South America other than through Wolff.

22. An injunction is necessary because, among other things:

A. Wolff has a clear right in need of protection, as it has manufacturing and exclusive distribution rights in North and South America for the industrial grade card shuffler;

B. Wolff's rights are in immediate and long-term jeopardy, as on information belief, Shuffle Tech has already conducted negotiations to create and sell the device without Wolff. In fact, paragraph 27 of the Complaint states that "Shuffle Tech is being precluded from entering into agreements with third parties based on the uncertain status of the agreement", clearing indicating that such plans to sell the device without Wolff's participation are well advanced;

C. In the absence of an injunction Wolff will sustain irreparable damage for which there is no adequate remedy at law, in  that :

(1) the technology  for the card shuffler is unique and patented; Wolff is not aware of any  equivalent device being developed for which it might obtain those rights or anticipated profits; and

(2)  Money damages would be both inadequate and difficult to determine, since if other entities manufacture and distribute the device, there is no way to determine

whether they would be as successful in the marketplace as Wolff, and using actual sales as a measure of damages would not capture its full unknown potential; moreover, other entities might offer to sell or lease the device at a different price or on different terms than Wolff, and it would be speculative to guess whether those sales or leases would be the same as if they were on different terms Wolff might offer; in addition, as another distributor might not have the same contacts, reputation, history, or capacity for follow up service, a buyer might still purchase the device from Wolff but not from another source even if the identical product was offered by someone else;

(3) Having already approached numerous third parties for exclusive business arrangements as the exclusive distributor of the product, Wolff's goodwill, standing, reputation and credibility in the gaming market and in Wolff's business would be irreparably injured if prospective customers perceived that Wolff had misrepresented its exclusive rights to distribute the device and that they were actually able to buy the product elsewhere. Moreover, Wolff's future opportunities to provide other products and services to those business prospects would also be foreclosed, and such damages would be incalculable.

D. Wolff is likely to prevail on the merits of this case, in light, among other things, of Shuffle Tech's many statements to Wolff and others that Wolff had exclusive rights and Shuffle Tech's receipt and retention of money from Wolff to obtain those rights and share in the product's development, distribution and sale.

WHEREFORE, Wolff Gaming, Inc. seeks relief against Shuffle Tech including:

A.  A temporary and permanent injunction preventing Shuffle Tech or its affiliates from manufacturing, distributing or selling an industrial grade card shuffler without Wolff;

B.  A judgment against Shuffle Tech International, Inc. in such amount exceeding $1,000,000 as will fully compensate Wolff for its damages;

C.  Costs of suit; and

D.  Such other and further relief as is warranted.

<u>COUNT II</u>

(FRAUD-SHUFFLE TECH and SCHULTZ)

23. Wolff repeats and incorporates paragraphs 1 through 15 of these Counterclaims as paragraph 23.

24. Beginning around April, 2010 and continuing through much of 2011, Shuffle Tech engaged in a scheme to defraud Wolff by inducing Wolff to pay it large sums of money and to perform services for its benefit based on the intentional misrepresentation that in return for providing such money and assistance, Shuffle Tech was providing Wolff with exclusive distribution rights to the industrial grade card shuffler in North and South America including the Caribbean region.

25.  Despite those repeated representations, Shuffle Tech contends in this lawsuit, however, that it never actually provided such exclusive distribution rights to Wolff, and that Wolff never acquired such rights. If Shuffle Tech's contention is correct,

then Shuffle Tech continuously misled and deceived Wolff with misrepresentations that Wolff was its exclusive distributor in those market territories.

26. Shuffle Tech's misrepresentations included but were not limited to the following:

A. On or about May 4, 2010, Rick Shultz ("Schultz"), the President of Shuffle Tech, prepared and provided Kevin Wolff with a Development & Distribution Agreement which recited, among other things, that "…Shuffle Tech hereby appoints Wolff as Shuffle Tech's exclusive distributor of Products in the Territory".

B. On or about June 3, 2010, Schultz prepared and provided Wolff with a revised Development and Distribution Agreement which stated, among other things, that:

(1) The "fully automatic card shuffling machines…[are] to be developed by Shuffle Tech, manufactured and distributed exclusively by Wolff in North and South America, and exported by Shuffle Tech to customers outside of North and South America." and

(2) "Shuffle Tech hereby appoints Wolff as Shuffle Tech's exclusive distributor of products in the Territory. During the term of this Agreement, Shuffle Tech agrees not to supply components or appoint any other Distributors for Products in the Territory, unless otherwise specifically provided herein, and further undertakes to refer promptly to Wolff any leads concerning prospective customers of the Products located in the Territory which, directly or indirectly, come to the attention of Shuffle Tech."

C. On or about June 3, 2010, Schultz prepared, signed, and provided to Kevin Wolff a letter affirming "our mutual commitment to proceed with the draft Development & Distribution Agreement based on the Discussion Draft dated June 3, 2010 and amended today as per our discussion." The Development & Distribution Agreement referred to in that letter contained the language quoted in the preceding paragraph of this Affirmative Defense, repeatedly appointing Wolff as exclusive distributor in the Territory.

D. On or about September 12, 2010, Schultz sent Kevin Wolff an email stating that "This machine will be distributed in the U.S. exclusively through Wolff Gaming".

E. In or about November, 2010, Schultz wrote and sent sent Kevin Wolff an e-mail stating that "We have an exclusive agreement to sell casino grade automatic shufflers exclusively through Wolff Gaming in Denver in North and South America".

F. On or about March 22, 2011, Schultz provided Kevin Wolff with a Draft Term Sheet to license the technology for the card shuffler which recited that "Wolff/DEQ shall have the exclusive right to lease or sell "Casino/Industrial" machines using licensed Shuffle Tech technology in North and South America including the Caribbean".

27. Shuffle Tech made these and other misleading misrepresentations in order to induce Wolff to pay Shuffle Tech large sums of money to develop the card shuffler and to develop a market for it.

28. Wolff reasonably relied on those representations by, among other things, paying Shuffle Tech approximately $124,940 to develop the product and by spending substantial time, money and effort to develop a market for the card shuffler.

29. In addition, on information and belief, in 2011, Shuffle Tech undertook discussions and negotiations to sell the card shuffler directly or through other distributors in North America, South America, or the Caribbean region. Shuffle Tech conducted those discussions in secret without disclosing them to Wolff in the hope of selling the device without compensating Wolff for such sales. Under the circumstances, where Wolff had exclusive distribution rights, it was deceptive for Shuffle Tech to fail to disclose those discussions and business opportunities to Wolff.

30. On information and belief, Shuffle Tech and/or Schultz misappropriated some of the funds provided by Wolff and expended it for purposes other than developing the product with Wolff.

31. Wolff has been damaged by Shuffle Tech's conduct in that, among other things:

    (a) Wolff paid Shuffle Tech approximately $124,940 in reliance on its representations;

    (b) Wolff has expended considerable time and money in efforts to market the card shuffler;

(c) Wolff has been deprived of other potential business opportunities which it could have pursued with the time, money and effort it expended on its venture with Shuffle Tech;

(d) Wolff has and will have to expend considerable legal fees and expenses in rectifying Shuffle Tech's misconduct.

32. Wolff repeats and incorporates paragraph 22 of these Counterclaims as paragraph 31.

WHEREFORE, Wolff Gaming, Inc. seeks a judgment against Shuffle Tech International, Inc. and Richard J. Schultz jointly and severally:

(a) Awarding Wolff compensatory damages in such amount exceeding $1,000,000 as will fully compensate it for its lost investments of money, time, efforts and profits;

(b) Awarding Wolff punitive damages in an appropriate amount not less than $1,000,000;

(c) Entering a temporary and permanent injunction preventing Shuffle Tech , Schultz or their affiliates from manufacturing, distributing or selling an industrial grade card shuffler without Wolff;

(d) Awarding Wolff its attorney's fees and costs in connection with this action; and

(e) Awarding such further relief as is appropriate.

<u>COUNT III</u>

(BREACH OF FIDUCIARY DUTIES-SHUFFLE TECH AND SCHULTZ)

33. Wolff repeats and incorporates paragraphs 1 though 15, 22 and 30 as paragraph 33.

34. During their relationship, Schultz and Shuffle Tech assured Wolff and others orally and in writing that a partnership or functionally equivalent relationship existed between them to develop and market the card shuffler.

26

35. Shuffle Tech and Schultz had special knowledge of automatic card shufflers by reason of their experience in developing and patenting technology used in such devices, which special knowledge was superior to Wolff's. Wolff placed great trust in Shuffle Tech and Schultz to properly develop a commercial grade card shuffler due to their special expertise with such devices.

36. In reliance on their partnership, joint venture, or equivalent relationship, as well as Shuffle Tech's dominant experience with and knowledge of card shufflers, Wolff paid Shuffle Tech more than $100,000 to develop the card shuffler, and spent substantial time, money and effort promoting it.

37. As a result of the partnership, joint venture or equivalent relationship formed between them, which Schultz personally negotiated and acknowledged, Shuffle Tech and Schultz owed Wolff fiduciary duties with respect to the development, distribution and sale of the card shuffler.

38. Among the fiduciary duties which Shuffle Tech and Schultz owed Wolff were duties of loyalty, fairness, disclosure of material facts, not to profit at the expense of Shuffle Tech and to develop the card shuffler on a timely basis.

39. Shuffle Tech and Schultz breached their fiduciary duties to Wolff by among other things:

A. Failing to deliver a working prototype of the card shuffler on a timely basis;

B. Denying and attempting to deprive Wolff of its exclusive distribution rights in its territories;

C. On information and belief, talking to and negotiating with third parties to acquire distribution rights in Wolff's territories;

D. Trying to deprive Wolff of any rights, sales or profits in connection with the sales of card shufflers;

E. On information and belief, negotiating to sell the card shuffler to potential buyers introduced by Wolff while circumventing Wolff's distribution rights; and

F. On information and belief, negotiating to sell the card shufflers to buyers in Wolff's territories so as to increase Shuffle Tech's own profit at the expense of Wolff's profit.

40. As a result of Shuffle Tech's and Schultz's conduct, Wolff has been damaged in that, among other things:

A. Wolff has been unable to sell or lease the card shuffler to potential buyers;

B. Wolff has been and will be deprived of anticipated profits;

C. Wolff has paid Shuffle Tech more than $100,000, for which it has received nothing in return;

D. Wolff has expended considerable time, money and effort in efforts to market the product;

E. Wolff has incurred and will incur substantial attorney's fees and costs to rectify Shuffle Tech's and Schultz's misconduct.

WHEREFORE, Wolff Gaming, Inc. seeks a judgment against Shuffle Tech International, Inc. and Richard J. Schultz jointly and severally:

(a) Awarding Wolff compensatory damages in such amount exceeding $500,000 as will fully compensate it for its lost investments of money, time, efforts and profits;

(b) Awarding Wolff punitive damages in an appropriate amount not less than $500,000;

(c) Awarding Wolff its attorney's fees and costs in connection with this action; and

(d)  Awarding such further relief as is appropriate.

COUNT IV

(DECLARATORY JUDGMENT-SHUFFLE TECH)

41. Wolff repeats and incorporates paragraphs 1 through 15, 22 and  as paragraph 41.

42. An actual controversy between Wolff and Shuffle Tech exists as to whether or not Wolff has exclusive rights to distribute the card shuffler in North and South American and the Caribbean and as to whether it holds any manufacturing rights.

43. Wolff contends that the parties' agreements and actions have provided Wolff with exclusive rights in those territories and Shuffle Tech disputes those rights.

44. The dispute is substantial and immediate in that Shuffle Tech has indicated in the Complaint that it seeks to enter into agreements with third parties which on information and belief may violate Wolff's exclusive rights and deprive it of business opportunities. In addition, Wolff needs to know whether it is bound to continue performing work pursuant to the parties' agreements.

WHEREFORE, Wolff Gaming, Inc. seeks entry of a judgment

A.  Declaring that Wolff has exclusive distribution rights in North and South America including the Caribbean for any industrial card shuffler developed by Shuffle Tech;

B.  Declaring that Wolff holds manufacturing rights for the device;

C.  Entering a temporary and permanent injunction preventing Shuffle Tech , Schultz or their affiliates from manufacturing, distributing or selling an industrial grade card shuffler without Wolff; and

D.  Providing such further relief as the Court deems appropriate.

<u>COUNT V</u>

(UNJUST ENRICHMENT-SHUFFLE TECH)

45. Wolff repeats and incorporates paragraphs 1 through 15 as paragraph 45.

46. Shuffle Tech induced Wolff to provide it with more than $100,000 based on the false pretenses that it was partnering with Wolf to develop an industrial card shuffler and that Wolff would have exclusive rights to distribute it in North and South America and the Caribbean.

47. Shuffle Tech has unjustly retained the money Wolff provided and has made substantial progress in developing the card shuffler through means of using Wolff's money, efforts and ideas.

48. In addition, Wolff has provided Shuffle Tech with valuable sales and potential manufacturing leads which Shuffle Tech unfairly seeks to exploit for profit without compensating Wolff.

49. Under the circumstances, Shuffle Tech would be unjustly enriched if it was allowed to retain the benefit of Wolff's money, ideas, efforts and leads without compensating Wolff.

50. The Court should therefore order Shuffle Tech to fully compensate Wolff for the money, time, efforts and leads Wolff provided; for its contributions to developing the card shuffler; and for its contributions in enabling and facilitating sales of the device.

WHEREFORE, Wolff Gaming, Inc. seeks a judgment in its favor and against Shuffle Tech International LLC which:

A.  Awards Wolff the full value of the time, money and effort it expended in connection with the development and marketing of the card shuffler;

B.  Awards Wolff the full proceeds of any sales, leases and rights to manufacture, distribute, sell or license the card shuffler,  as Shuffle Tech should not profit from its wrongdoing;

C.  Awards Wolff its costs and reasonable attorney's fees; and

D.  Awards such further relief as the Court deems appropriate.


WOLFF GAMING, INC.

By: <u>ss:/Peter Ordower</u>

Its Attorney

Peter Ordower
Law Office of Peter Ordower, P.C.
10 S. LaSalle St., Suite 3500
Chicago, IL 60603
312-263-8060