**DISCUSSION DRAFT ONLY**
**REVISED 5/4/10**

## DEVELOPMENT & DISTRIBUTION AGREEMENT

This Agreement is made this 4th day of May, 2010 between Shuffle Tech International LLC, a Limited Liability Company organized and existing under the Laws of the State of Illinois, having its principal office at 1440 N. Kingsbury Street, Suite 218, Chicago, IL 60642 ("Shuffle Tech") and Wolff Gaming, Inc., a corporation organized and existing under the Laws of the State of Colorado, having its principal office at _____ ("Wolff").

Witnesseth:

WHEREAS, Shuffle Tech has scientific and commercial experience in the field of automatic card shufflers, has developed and applied for patents for a series of proprietary technologies and products for use in gaming, and is currently manufacturing automatic card shufflers; has expertise in marketing, distribution, and sale of automatic card shufflers to consumers and other non-regulated gaming equipment buyers; and intends to develop and manufacture industrial grade versions of it's fully automatic card shufflers for use in licensed, government regulated casinos worldwide; and

WHEREAS, Wolff is a licensed gaming equipment manufacturer with expertise in the distribution, sale, installation, and service of gaming products to licensed, government regulated casinos; and

WHEREAS, both parties intend to cooperate in the development of fully automatic card shuffling machines based on Shuffle Tech technologies for use in regulated legal gaming venues, said machines to be developed and manufactured by Shuffle Tech, distributed exclusively by Wolff in North and South America, and exported by Shuffle Tech to customers outside of North and South America,;

NOW, THEREFORE, in consideration of the mutual covenants and undertakings herein, the parties agree:

**1. Definitions**

As used herein:

A. <u>Products</u>. "Products" as used in this Agreement shall refer to the industrial grade card shuffling machines and accessories licensed and intended for use in legal gaming venues, more particularly described in Schedule "A," as well as any improvements, additions, or variations either party may make to such product line during the life of this Agreement.

B. <u>Technology</u>. "Technology" as used in this Agreement means the full range of technical knowledge and experience accumulated by Shuffle Tech, its officers, and employees, in the automatic card shuffler field, including scientific information covering the patents licensed to or from Shuffle Tech, and proprietary materials for manufacture of the Products and effective

configurations for application of the Products as well as the range of applications in which the Products have, from time to time, been successfully utilized.

C.  Territory. "Territory" as used in this Agreement area and shall mean the geographic area designated in Schedule "B" in which Wolff is authorized to sell Shuffle Tech Products.

D.  Patent Rights. "Patent Rights" as used in this Agreement shall mean and collectively include, all letters patent and patent applications listed in Schedule "E," all foreign patents which correspond to the letters patent in Schedule "E," as well as all letters patent and patent applications which may be granted on all continuation, continuations-in-part, divisions and renewals, reissues and extension thereof.

2.  **Rights Granted**

A.  Exclusive Distributor. In consideration of Wolff's contribution of $300,000 toward overall development for the "CWF" series of flush mounted "Card Washer" shufflers described in Schedule A, Shuffle Tech hereby appoints Wolff as Shuffle Tech's exclusive distributor of Products in the Territory. During the term of this Agreement, Shuffle Tech agrees not to appoint any other Distributors for Products in the Territory, unless otherwise specifically provided herein, and further undertakes to refer promptly to Wolff any leads concerning prospective customers of the Products located in the Territory which, directly or indirectly, come to the attention of Shuffle Tech.

3.  **Term and Termination**

A.  Term. This Agreement shall have an initial term of two (2) years from date of execution of this Agreement. Thereafter, **this Agreement shall automatically renew on a year-to-year basis for a minimum of 14 years from the original date of execution.** Shuffle Tech's obligation to renew this Agreement shall be binding upon any successors to Shuffle Tech.

B. Termination for Breach. In case either party materially breaches any provision of this Agreement, the other party may immediately give notice of intention to terminate within three (3) months thereof, and, unless the breaching party notifies the other of a cure of such breach within such three-month period, this Agreement shall automatically terminate at the expiration thereof.

C.  Post-Termination Payments. Termination of this Agreement for any reason shall not affect: (i) obligations, including the payment of any sums of money, which have accrued as of the date of termination, and (ii) those obligations which, from the context hereof, are intended to survive termination of this Agreement.

D.  Non-Waiver. Any waiver by either party of the breach of any term or condition of this Agreement shall not be considered as a waiver of any subsequent breach of the same or any other term or condition hereof.

4.  **Pricing and Payment**

**DRAFT DATED May 4, 2010**

A. <u>Wolff Contribution Toward Development Cost</u>. Wolff shall contribute $300,000 toward total development costs of the CWF and CWT series of flush mounted card shufflers described in schedule C. These funds will be used for development of the CWF-1, CWF-2, and CWT-1 models. The CWT-2 model (table top unit with packet dispensing feature) will be developed at a later time and may require additional contribution toward development funding. The development fee shall be paid as a deposit of $100,000 at the start of the project, $100,000 upon delivery of a working prototype to GLI or BMM, and then Underwriters Laboratories if required, and certification of said prototype by one or both agencies for use in legal gaming and by UL if applicable, and the remaining $100,000 upon final completion of the project, with all final tooling/CNC programming completed and ready to start production, and a Freedom to Operate Opinion from our patent attorneys.

B. <u>Development Cost Rebate</u>. At the time of the initial blanket purchase order, Shuffle Tech will rebate 50% of the total development cost to Wolff in the form of a discount of $▮ allocated to the first 100 units at $▮ per unit.

C. <u>Product Pricing</u>. Shuffle Tech agrees to sell Products to Wolff at prices designated in Schedule C.

D. <u>Initial Production Order and Price</u>. Upon completion of development and when Shuffle Tech is ready to begin mass-production, Wolff agrees to place an initial blanket order for 100 machines. Said blanket order will specify delivery of all 100 machines within six (6) months of the PO date. The purchase order prices will reflect the one time development discount of $▮ per unit pursuant to Paragraph 4B above.

E. <u>Cost/Price Changes</u>. Shuffle Tech may from time to time amend the cost and suggested retail list prices of Products with ninety (90) days written notice to Wolff. Any orders placed prior to expiration of the 90 day notice period shall be invoiced at the price effective at such time, provided that the Products are ordered to ship within thirty (30) days of the order date. Price increases shall be limited by the rate of inflation in the United States as measured by the Consumer Price Index, and or other justifiable and documented increases in material costs.

F. <u>Payment for Purchases</u>. Unless otherwise agreed for particular transactions, default terms for all sales from Shuffle Tech to Wolff shall be a 20% deposit for each blanket order of at least 100 machines, with the balance due Net Fifteen (15) Days from the date of shipment. For the initial blanket order, the 20% deposit shall be based on the standard cost of the Products, not the discounted price.

**5. Performance by Wolff**

A. <u>Sales</u>. Wolff agrees to promote vigorously the sale of the Products in the Territory and, in reasonable stages, to develop a technically qualified sales and after-sales service and repair force for the Products in important commercial centers of the Territory. Wolff is responsible for all after sales service and support of Products in the field, provided that any machines that require repair under Shuffle Tech's Warranty may be returned to Shuffle Tech for repair, and

3

**DRAFT DATED May 4, 2010**

Shuffle Tech will repair said Products as promptly as possible. Wolff shall be responsible for all shipping costs associated with Warranty repairs.

B.   Quotas. Wolff agrees that reasonable annual Quotas shall be established by Shuffle Tech for sales of Products within the Territory. Effective from the date that Shuffle Tech is prepared to begin and otherwise met the requirements of the development process, Wolff shall place blanket purchase orders for a minimum of 300 Products per calendar year, with minimum blanket order quantities of 100 units. Failure by Wolff to take delivery of a minimum of 300 Products in the calendar year shall represent a breach of this Agreement and Shuffle Tech may notify Wolff of this breach. In the event of such a breach, Wolff must take delivery of at least 100 Products in the first quarter of the subsequent calendar year, plus a quantity that brings the total for five consecutive quarters to 400 Products, otherwise Shuffle Tech may terminate this Agreement for breach at the end of the fifth of the five consecutive quarters from the initial breach.

C.   Product Sales and Application Support. Wolff agrees to keep Shuffle Tech regularly informed of Wolff's operating and sales activities relating to the Products, and to furnish to Shuffle Tech, free of charge, descriptions of novel applications of the Products, or pertaining to the use of the technology, which might be useful to Shuffle Tech, and to provide all service history data for all machines for Shuffle Tech's use in evaluation and continuous quality improvement.

D.   Exclusive Sale of Shuffle Tech Products. Wolff agrees that during the terms of this Agreement, Wolff will not sell in the Territory any other products that are directly competitive with the Products. Nevertheless, Wolff will be free to extend its sale of the Products by acquiring distribution rights and/or manufacturing licensing rights to complementary products, or to develop such products directly, provided they are not directly competitive with Products manufactured by Shuffle Tech.

**6.   Performance by Shuffle Tech**

A.   Promotional Materials. Shuffle Tech shall from time to time provide technical and other informational support to Wolff in the development of product catalogs, display materials and/or similar sales promotion aids useful for Wolff to conduct marketing, sales and servicing of the Products.

B.   Technical Support. Shuffle Tech shall provide reasonable technical support to Wolff in response to all inquiries from Wolff regarding the function and sale of the Products within the Territory.

C.   Shipments to Wolff. Shuffle Tech agrees to ship all orders received from Wolff as promptly as possible pursuant to blanket orders, provided that Wolff must provide a sixty (60) day lead time for delivery of the first machine on the blanket order. If any items ordered cannot be shipped within thirty (30) days of receipt of shipping instructions pursuant to an open blanket order from Wolff, Shuffle Tech will undertake to inform Wolff by facsimile transmission,

**DRAFT DATED May 4, 2010**

telephone and/or e-mail about such delay, and the reasons therefore and Shuffle Tech will pay reasonable costs required to expedite delivery and installation in the end-user site.

7. **Patents, Trademarks, and Infringements**

A. Trademark Registration. Shuffle Tech agrees to obtain registrations of the trademark Shuffle Tech, as well as other product marks which Wolff considers appropriate, in all jurisdictions of Territory in which Wolff sells the Products.

B. Registered use of Trademarks. If it is advisable to enter Wolff as a registered user of any of Shuffle Tech's trademarks, as a result of Wolff's activities hereunder, the parties agree to cooperate to effect such recordation. All expenses relating to the registration of Shuffle Tech's trademarks, including the entry of Wolff as a registered user thereunder, shall be at Shuffle Tech's expense. Shuffle Tech agrees to keep Wolff currently informed about the status of Shuffle Tech's portfolio of trademark registrations in the Territory.

C. Use of Logo and Trademark. The parties agree that the Products, packaging used in relation thereto, and promotional material will be appropriately marked with Shuffle Tech's trademarks. The parties also recognize that the standing of Wolff in the Territory would make it advantageous also to use the Wolff's logo and trademark in relation to the Products, provided this does not dilute the distinctiveness of Shuffle Tech's trademarks. Wolff is therefore authorized to use the Wolff's logo and trademark in connection with the sale and distribution of the Products in the Territory, provided that the manner of use thereof shall have previously been approved by Shuffle Tech.

D. Patent Protection. Shuffle Tech either legally or beneficially owns or controls in its own name the entire right, title, and interest in and to the Patent Rights, including the rights to grant licenses and to require licenses to be granted under any of the Patent Rights, and to enforce and to require the enforcement of any issued patent or patents of the Patent Rights against any third party infringing any claim or claims of any patent included in such Patent Rights. The patents set forth in Schedule "E" represent a full and complete list of all of the patents included in the Patent Rights pertaining to the Products which are in existence as of the execution of this Agreement, and which are either legally or beneficially owned in Shuffle Tech's name or controlled by it.

E. Indemnification. Shuffle Tech agrees to indemnify and hold harmless Wolff and all officers, directors, employees, and agents of Wolff from and against any and all claims, damages and liabilities, including legal costs and fees, of or asserted by any third parties (whether governmental or private) arising from the provision of any Product pursuant to this Agreement. Shuffle Tech shall inform Wolff of any suits or threats of lawsuits against Shuffle Tech relating to Products.

8. **Warranty**

A. Shuffle Tech's Warranty. All Products sold by Shuffle Tech to Wolff shall be subject to Shuffle Tech's Standard Warranty which is set forth on Schedule "D" hereto. Wolff shall not

make any representations or warranties on behalf of Shuffle Tech and Wolff shall be solely responsible for any extension of warranties beyond those extended in writing by Shuffle Tech.

B.  <u>Wolff's Warranty to Customers</u>. It is contemplated and agreed that Wolff shall sell Products to customers subject to a written limited warranty extended by Wolff. Wolff shall cooperate with Shuffle Tech in drafting and using appropriate language in such warranty so as to provide reasonable protection to both Wolff and Shuffle Tech. Any form or other document submitted by Wolff to its customers containing Wolff's written warranty or warranty policy shall first be submitted to Shuffle Tech for review and comment as Shuffle Tech deems appropriate prior to use by Wolff. Wolff shall indemnify and hold Shuffle Tech harmless for all losses resulting from Wolff's failure to comply with this provision.

**8. Confidential Information**

<u>Maintenance of Confidentiality</u>. Both parties agree to keep strictly confidential, and to bind their respective officers and key employees to like covenants, the terms of this Agreement, and information relating to the Products and the Technology supplied by the other party, which remain outside the public domain. Both parties undertake not to disclose any of such terms or information to any other person except as may be necessary for the furtherance of this Agreement. Each party acknowledges that any trade secrets, know-how, or technology obtained from the other party is the exclusive property of such other party and is not to be used or disclosed without the express written consent of the other party.

**9. Other Covenants**

A.  <u>Product Specification</u>. Shuffle Tech guarantees that all of the Products shipped to Wolff are in accordance with their indicated specifications, and that packaging and method of shipment are of sufficient standards that the Products may reasonably be expected to arrive in the Territory in working condition.

B.  <u>Independent Contractors</u>. During the term hereof, the relationship between Shuffle Tech and Wolff is that of independent contractors. Wolff, its agents and employees, shall, under no circumstances, be deemed agents or representatives of Shuffle Tech. Neither party shall have any right to enter into any contracts or commitments in the name of the other party, or otherwise to bind the other party. Furthermore, neither party will attempt to employ any employees of the other party without prior written consent.

C.  <u>Severability of Provisions</u>. A judicial, arbitral or administrative declaration in any jurisdiction of the invalidity of any one or more of the provisions of this Agreement shall not invalidate the remaining provisions of this Agreement.

**11. Force Majeure**

<u>Force Majeure</u>. Neither party shall be in default hereunder by reason of its delay in the performance of or failure to perform any of its obligations hereunder if such delay or failure is

**DRAFT DATED May 4, 2010**

caused by strikes, acts of God or the public enemy, riots, incendiaries, interference by civil or military authorities, compliance with governmental laws, rules and regulations, delays in transit or delivery, inability to secure necessary governmental priorities for materials, or any fault beyond its control or without its fault or negligence.

### 12. Assignability

Assignability. Wolff understands and agrees that its rights under this Agreement are not transferable, and may not be assigned by Wolff to any other individual or business entity without the prior written approval of Shuffle Tech, such approval to be at solely at the discretion of Shuffle Tech. An assignment includes, but is not limited to, any change in ownership or control of Wolff, including any divestiture, merger, sale, combination, or any other mechanism by which the control of Wolff or its business can be deemed to have changed. In the event of a change of ownership or control of Wolff, written approval from Shuffle Tech shall not be unreasonably withheld if the party taking over control of Wolff demonstrates a good faith commitment to market the Shuffle Tech Products in a manner consistent with Wolff prior to said change of ownership or control.

### 13. Insurance Coverage

A. Product Liability Insurance Coverage. Shuffle Tech agrees to maintain adequate insurance in a minimum amount of $1 Million, and to name Wolff as an additionally named insured to such insurance policy. Proof of such insurance coverage shall be provided to Wolff upon request.

B. Intellectual Property Defense Insurance Coverage. Shuffle Tech shall secure and carry a Intellectual Property Defense Insurance policy of at least $1 million for defense against patent infringement claims against Shuffle Tech, Wolff, or any related party or customer within the United States, and Shuffle Tech shall name Wolff as an additionally named insured to such insurance policy. Proof of Insurance shall be provided to Wolff upon request.

### 14. Arbitration

Arbitration. Any controversy or claim arising out of or related to this contract, or the breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association ("AAA") at Chicago, Illinois under the commercial codes of the AAA. The parties agree to select a panel of three (3) arbitrators. Any suit or proceeding brought in any court shall, in the application of one of the parties, be stayed until such arbitration has been had in accordance with the terms of this Agreement. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

### 15. Governing Law

Governing Law. This Agreement shall be interpreted in accordance with the Laws of the State of Illinois, United States of America.

16. **Complete Agreement**

<u>Complete Agreement</u>. This Agreement contains all the understandings and representations between the parties relating to the matters referred to herein, supersedes any arrangements previously entered into between them with respect thereto, and may be entered into between them with respect thereto, and may be amended only by a written supplement, duly executed on behalf of the respective parties. This Agreement cannot be assigned without the prior written consent of the other party, which consent will not be unreasonably withheld.

| **WOLFF GAMING, INC.** | **SHUFFLE TECH INT'L LLC** |
|---|---|
| BY: _____ | BY: _____ |
| TITLE: _____ | TITLE: _____ |
| DATE: _____ | DATE: _____ |

## SCHEDULE "A"
## TO DISTRIBUTION AGREEMENT

The Products covered by this Agreement are:

The "Card Washer" industrial grade single/double deck automatic card shuffler certified for use in legal gaming venues.

**DRAFT DATED May 4, 2010**

## SCHEDULE "B"
## TO DISTRIBUTION AGREEMENT

The Territory covered by this Agreement is:

North and South America, including Caribbean region.

**DRAFT DATED May 4, 2010**

## SCHEDULE "C"
## TO DISTRIBUTION AGREEMENT

Shuffle Tech agrees that the following and/or attached list of prices and wholesale costs shall apply to sales of products from Shuffle Tech to Wolff:

| Item (SKU) | Retail List Price/(Cost) (U.S.$/unit) |
|---|---|
| Shuffle Tech Flush Mounted Single Deck "Card Washer" with deck count verification feature. Model #CWF-2 | $████████ |
| Shuffle Tech Flush Mounted Single Deck "Card Washer" without deck count verification feature. Model #CWF-1 | $████████ |
| Shuffle Tech Table-Mounted Single Deck "Card Washer" with deck count and packet dispensing features. Model #CWT-2 | $████████ |
| Shuffle Tech Table-Mounted Single Deck "Card Washer" without deck count and packet dispensing features. Model #CWT-1 | $████████ |

1

**DRAFT DATED May 4, 2010**

## SCHEDULE "D"
## TO DISTRIBUTION AGREEMENT

The following and/or attached warranty shall be made part of this Agreement and is applicable thereto as Shuffle Tech's Standard Warranty, subject to terms and conditions contained therein:

[Shuffle Tech to draft one-year warranty to apply to industrial grade machines for use in legal gaming venues.]

**DRAFT DATED May 4, 2010**

# SCHEDULE "E"
# TO DISTRIBUTION AGREEMENT

The following and/or attached patents and/or patents pending shall be made part of this Agreement:

"Card Washer" US Application Serial Number 12/151358

"ST-1000" US Patent D578,577 issued October 14, 2008 US Application Serial Numbers 11/706707, 12/151358, 12/485599 Application Filing Date: February 15, 2007 (Original Application '707)