IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHUFFLE TECH INTERNATIONAL, LLC, an Illinois limited liability company, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No.11-CV-7358 |
| | ) |
| WOLFF GAMING, INC., a Colorado Corporation, | ) ) |
| | ) |
| Defendant. | ) |

<u>MEMORANDUM OPINION AND ORDER</u>

For the second time in the course of this acrimonious dispute over a business deal gone bad, I am asked to enter summary judgment, this time in favor of defendant Wolff Gaming on the only claim still pending: plaintiff's claim that defendant breached the parties' Letter of Intent (the "LOI") dated June 3, 2010. Earlier this year, I granted summary judgment in plaintiff's favor on its claim for a declaration that a contemporaneous document—the "Draft Agreement"—was not an enforceable contract, and that plaintiff's only obligation to defendant was to refund $124,940 in earnest money that defendant advanced it while negotiations were ongoing.[1] I also granted

---

[1] I am puzzled by the dispute that has since arisen over whether plaintiff must pay defendant this money. *See* DN 108, 118, and 119. The very claim on which plaintiff successfully sought summary judgment requested, *inter alia*, "a judgment declaring that Shuffle Tech's only obligation to Wolff is to refund

summary judgment in plaintiff's favor on all of defendant's counterclaims. *Shuffle Tech Intern. LLC v. Wolff Gaming, Inc.*, --- F. Supp. 2d ---, 2013, WL 2598952 (N.D. Ill. Jun. 11, 2013). Because plaintiff's remaining claim is likewise appropriate for summary disposition, I grant defendant's motion.

## I.

My previous opinion summarized the background leading up to the parties' dispute, so I need not repeat it at length here. To recall, plaintiff manufactures and sells consumer-grade automatic card shuffling machines, while defendant manufactures and sells gaming equipment to casinos and other establishments. The parties contemplated entering into an agreement pursuant to which plaintiff would develop casino-grade card shufflers with financial support from defendant, who would then be the shufflers' exclusive distributor. The parties drafted two, contemporaneous documents memorializing their plans. The one now at issue is the one-page LOI, signed by both parties, the entirety of which reads:

> This is to confirm our mutual commitment to proceed with the draft Development & Distribution Agreement based on the Discussion Draft dated June 3, 2010 and amended today as per our discussion. Our mutual commitment to proceed is contingent upon attorney

---

$124,940 advanced to Shuffle Tech as earnest money." Corrected Second Amended Complaint at 9 [DN 79]. Nothing in my June 11 opinion suggests that summary judgment was granted as to less than all of this claim.

review and gaming authority review, and language of the
draft Agreement is subject to modification to conform
to applicable gaming law and regulation.

As evidence of Wolff Gaming's commitment to proceed,
Wolff Gaming agrees (sic) immediately pay $100,000
toward the total $525,000 initial commitment described
in the draft Agreement.  This earnest money is to be
held by Shuffle Tech and may be used to proceed with
the project; however, in the event that a final
Agreement cannot be signed within 90 days, Wolff Gaming
may request the return of the entire $100,000 paid as
earnest money, and said earnest (sic) will be refunded
within 15 days of said request.  Provided the Agreement
is signed, the earnest money will be deemed to be the
initial payment.

Please countersign this letter below to affirm that
this represents our agreement.

As I explained in my previous opinion, the parties never
reached the contemplated "final" agreement.  Defendant did not,
however, request the return of its earnest money at any time
prior to the start of this litigation.[2]  Indeed, defendant
declined to respond to plaintiff's multiple missives requesting
instructions for returning the earnest money, which plaintiff
sent after informing defendant, on August 1, 2011, of plaintiff's
desire that the parties "settle all outstanding business … and go
[their] separate ways."  *Shuffle Tech*, 2012 WL 2598952, at *5.

---

[2] In fact, defendant  requested the return of these funds only
after I granted summary judgment of plaintiff's declaratory
claim, since until that point, defendant had maintained that the
"Draft" distribution agreement dated June 3, 2010, *was* the
parties' final, enforceable agreement.

3

Plaintiff asserts that the LOI is a "valid, binding agreement between the parties," which a jury could find plaintiff performed and defendant breached to plaintiff's detriment. To prevail on this claim, plaintiff would have to prove: "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. 2012) (applying Illinois law). Plaintiff insists that the "express terms of the LOI" require defendant: 1) to commit to work in good faith towards the completion and execution of a final Development & Distribution Agreement; and 2) to seek and receive attorney and gaming authority review of the Draft Agreement, and that defendant breached these duties. But neither the law nor the facts support plaintiff's theory of liability.

To begin, while it is true that a letter of intent may create an enforceable agreement to negotiate in good faith, which generally prevents the parties from "renouncing the deal, abandoning the negotiations or insisting on conditions that do not conform to the preliminary agreement," the existence and scope of that duty "can only be determined…from the terms of the letter of intent itself." A/S *Apothekernes Laboratorium for Specialpraeparater v. I.M.C. Chemical Group, Inc.*, 873 F.2d 155,

4

158 (7th Cir. 1989). Despite plaintiff's insistence that the "express terms of the LOI" impose a duty to work in good faith towards a final agreement, plaintiff points to no language in the LOI that purportedly does so, nor does such a duty arise from "broad principles dealing with the common law duty to perform contracts in good faith." *Id.* at 159. Where an agreement "could have been structured to require good faith negotiations or an established framework for the negotiation process, but it did not," and instead "expressly contemplated that the parties may not complete the deal," there is no duty to negotiate in good faith. *Citadel Group Ltd. v. Washington Regional Medical Center*, 692 F.3d 580, 592 (7th Cir. 2012). Because that is the case here, plaintiff cannot, as a matter of law, prevail on the theory that defendant breached the LOI by failing to return plaintiff's calls, proposing a different deal from the one the parties originally envisioned, or otherwise failing to reach a final agreement.

Plaintiff's theory that defendant breached the LOI by failing to seek and receive attorney and gaming authority review is equally flawed because the LOI plainly does not require defendant to take these steps. The only provision referencing attorney and gaming authority review states only that the parties' "mutual commitment to proceed is contingent upon

5

attorney review and gaming authority review." This language cannot reasonably be read to create an affirmative duty on either party to seek and obtain such review.

The foregoing reasons are sufficient to entitle defendant to summary judgment of plaintiff's remaining contract claim, but there appear to be others, too. Although the parties focus their arguments primarily on the last two elements of plaintiff's claim (breach and damages), the claim arguably falters at the gate on the basis that the LOI is not an enforceable agreement at all under Illinois law. Specifically, I am doubtful that the LOI creates the necessary "mutuality of obligation," since plaintiff's only concrete duty is a contingent one: to return defendant's earnest money, upon defendant's request, in the event a final agreement is not signed within 90 days. Otherwise, the LOI provides only that plaintiff "may" use the earnest money to proceed with the project. I am likewise skeptical that the terms of the LOI are sufficiently "definite and certain so that a court can determine what the agreement was and what conduct constituted a breach." *Bensdorf & Johnson, Inc. v. Northern Telecom Ltd.,* 58 F. Supp. 2d 874 (N.D. Ill. 1999) (citing *Kraftco Corp. v. Kolbus*, 274 N.E. 2d 153 (Ill. App. Ct. 1971)). As defendant pointed out in the last round of summary judgment briefing, if one reads the LOI without reference to the contemporaneous Draft Agreement (the

6

final terms of which were never agreed upon), "one would have no idea what the [earnest] money was for, and [plaintiff] would have no obligation to do anything in return for the $525,000 commitment. There is not even any identification in the [LOI] of what the parties are to develop and distribute, nor any description of any role [plaintiff] will have in the venture." Def.'s SJ Opp. at 10 [DN 80]. Because the parties have not raised these issues in their current briefs, and because defendant is entitled to summary judgment for the reasons explained above, I need not explore these additional shortcomings further. In short, plaintiff's claim for breach of the LOI suffers from a multitude of infirmities entitling defendant to judgment as a matter of law.

_____
Elaine E. Bucklo
United States District Judge

Dated: October 17, 2013